CASE 63—PETITION EQUITY—MARCH 14.

# Huston, &c., v. Reutlinger, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. COMBINATIONS IN RESTRAINT OF TRADE—VOLUNTARY ASSOCIATIONS. —In all classes of business the employer and employe should be allowed to contract with each other unrestrained by others, either as to the number of men to be employed or as to the compensation to be paid, and, as a general rule, when restrictions are placed upon these rights by combinations or associations of men, they will be regarded as unlawful and void.

By-laws of a board of underwriters, an unincorporated voluntary association, by which members of the association are limited as to the number of solicitors they may employ, the time of employment and the compensation to be paid, and are prohibited from contracting with a solicitor so as to make his pay depend upon the risks he procures, and are prohibited to employ a solicitor who has, within a certain time, severed his connection with another member, are each and all in violation of the law of the land and contrary to the organic law of the association, and the association will not be allowed to enforce them.

2. THE CHANCELLOR WILL INTERFERE TO PREVENT THE UNLAWFUL SUSPENSION OR EXPULSION OF A MEMBER OF A VOLUNTARY ASSOCIATION, if his suspension or expulsion would necessarily result in affecting his financial standing, as well as in depriving him of the use of property that is common to all, however insignificant its value.

3. MEMBERS OF VOLUNTARY ASSOCIATIONS MUST ABIDE BY ITS RULES AND REGULATIONS, unless contrary to the fundamental law of the order or in violation of the law of the land.

W. O. HARRIS, BULLITT & SHIELD FOR APPELLANT.

BYRON BACON, B. F. BUCKNER, MARSHALL & LOCHRE, J. K. GOODLOE, O'NEAL, JACKSON & PHELPS FOR APPELLEES.

Briefs not in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

These three actions in equity were instituted in the court below by Adolph Reutlinger, the Franklin Insurance Company, and the Union Insurance Company,

against the Louisville Board of Underwriters, in which injunctions are sought to prevent the appellants from enforcing against them certain by-laws adopted by the appellants in the month of August, in the year 1888, and from proceeding to convict them of employing more than one solicitor in the conduct of their insurance business, from denying them business intercourse with the members of the board, and from inflicting certain penalties denounced by its by-laws found in section 7 of the enactment of August, 1888. The appellants and the appellees are all members of the board of underwriters, a voluntary association unincorporated, and governed by a constitution adopted, and by-laws framed, by its members. The organization began its existence in the year 1854, and its constitution, as then framed, has remained in substance the same to the date of this litigation. The object of the association, as declared in the preamble to its organic law, is "for the purpose of securing uniformity in the rates of premiums, harmony in the conditions of insurance, and concurrence in the policies they may issue, hereby form an association to be known as 'The Louisville Board of Underwriters,' and for their better organization and government adopt the followine articles as their constitution."

The constitution provides the usual machinery necessary to perfect such an organization with provisions that are not objectionable, and no complaint seems to have been made by its members until the by-laws passed in August, 1888, were attempted to be euforced, and that were framed against the protest of the appellees.

Section 4, of the by-laws of that date, prohibited a local company from employing more than one solicitor, and then for not a period less than six months; and also regulated the manner in which his salary has to be paid, and no solicitor can be employed by any member of the board within twelve months after the termination of his connection as employe of another member. The member employing the solicitor is made responsible for the acts of the latter, and subjected to certain fines and penalties for a violation of the by-laws. Section 5 makes it the duty of a member to prefer charges when the tariff rates of insurance have been in his belief violated, or any of its by-laws, and this belief he communicates to two other members, who, if they think the facts warrant it, shall unite in making the charges. By section 7 the preferring "of charges, as ordained in the foregoing section, *shall be taken as prima facie* evidence of violation, and conviction follows, unless the accused establishes *satisfactorily* his innocence in twenty-four hours from the time the charge is formally preferred. *Absolute* business non-intercourse upon every subject and matter relating to insurance shall immediately be established and maintained between the members of the board and the accused member until the charge is officially declared of no effect." The accused is required to deposit fifty dollars with the secretary pending the investigation, and for a willful and deliberate violation of these by-laws, the fifty dollars is forfeited, and the member required to take up any and all policies written by him in violation of the by-laws. These members, who were the

complainants below, and appellees here, had more than
one solicitor, and were not disposed to admit the right
of the association to control them in the employment
of solicitors, or in the conduct of their business fur-
ther than to produce harmony and uniformity in the
insurance business.

This, in fact, seems to be the extent of the power
conferred on the association by its constitution and
its preamble, with the right to pass such by-laws as
may be necessary. to accomplish the object in view.
This, in fact, is a controversy between the home com-
panies of the city of Louisville and the agents of
foreign companies, the latter having a number of agen-
cies, and with greater business or capital to sustain
them.

It is proper, first, in determining the rights of these
parties, to ascertain the extent to which the chancel-
lor may go in giving the relief sought by the appellees
upon the facts alleged in their petitions.    There is a
plain distinction between the by-law of a corporation,
that must always at least be within the implied terms
of the grant made by the sovereign, and by-laws en-
acted by a voluntary association that derives its ex-
istence from the contract between its members.   A
member can withdraw from a voluntary association
when he pleases, and, as a general rule, such by-laws
as are adopted by the association will be held bind-
ing on its members.   If they have been agreed upon
by the members to be passed in a certain manner, and
that mode is followed, it is but seldom that the chan-
cellor will interfere.   In this case, while the appellant
is without capital, it is organized as a business body,

Huston, &c., v. Reutlinger, &c.

and its members, by reason of their connection with it, are given a standing as insurance men, and when indorsed by the association in the way of membership, their honor, fidelity and ability in the discharge of their duties will scarcely be questioned by the public; and besides, they have become interested in the building they occupy under a lease, with certain maps, charts, &c., that give information as to the character and location of the various buildings in the city of Louisville; and to be expelled from all business intercourse with such an association becomes at once a matter of pecuniary loss to the appellees. Therefore, in this character of case, if the by-laws enacted violate the public policy of the State, or if they are a departure from the object sought to be accomplished by the contracting parties, and are unjust and unreasonable, the chancellor will not hesitate, when called on, to protect the parties in the enjoyment of their rights as members of the association. The majority in this case have undertaken to control the business of these appellees; to say how many solicitors they shall employ, and who they shall employ; to renounce all business intercourse with them upon their refusal to submit to rules and regulations that are unreasonable and oppressive; and with no adequate remedy at law, a court of equity is the proper tribunal from which a restraining order should go preventing this unlawful action on the part of the majority. The trial as to one or more of these appellees was had in great haste by the association when learning that the chancellor was, at the time, being asked to issue a temporary injunction, and the appellees sus-

pended from all business intercourse with their fellow-members, and the fifty dollars deposited by each forfeited to the association, because of their refusal to permit their private business to be regulated by the association, and in declining to discharge their employes at its dictation.

The doctrine as to the right of a court of equity to interfere in this class of cases is well stated in the case of Otto v. Tailors' Union, 75 Cal., 313. It is there said : "Courts will interfere for the purpose of protecting property rights of voluntary associations in all proper cases, and where they take jurisdiction will follow and enforce, so far as is applicable, the rules for incorporated bodies of a like character."

In that case Otto, a member of the union, had been expelled for working for parties against whom the strike had been ordered, and his trial, the court held, "was a travesty on justice, and lacking all the elements of fairness and good faith, which should characterize the action of men in passing on the rights of their fellow-men."

The by-laws under which these appellants acted were not only in violation of the spirit and meaning of the organic law of the association, but subversive of every rule of right known to the common law, and in direct hostility to every organic law upon which free government is based. A conviction and suspension of the member follows, unless the accused, within twenty-four hours after the formal declaration of the accusation against him, appears and establishes his innocence, and for the privilege of having such an in-

vestigation he is required to deposit fifty dollars, that is forfeited to the association in the event the innocence of the accused is not shown. He is denied the privilege of showing that his business requires the employment of more than one solicitor, or that the by-law requiring him to discharge those in his employ is in violation of the law of the land, but is compelled to abandon all business intercourse with his fellow-members, and submit to a judgment of suspension that no chancellor should hesitate in adjudging null and void.

While members of voluntary associations must abide by its rules and regulations, unless contrary to the fundamental law of the order, or in violation of the law of the land, and even then the chancellor might be powerless to afford relief, still, when the suspension or expulsion results necessarily, as it must in this case, in affecting the financial standing of the appellees, as well as in depriving them of the use of property that is common to all, however insignificant its value, we perceive no reason for denying the relief sought.

The majority of the members, under the guise of producing harmony in this business association, have taken from these individual members the right to determine how many men they shall employ in their private business, and then only such as the association may think fit for the position; nor can they employ a solicitor for a less period than six months, or offer a solicitor an employment within twelve months after the solicitor has severed his connection with any other member; is compelled to discharge those in his

employ if he has more than one, and, if these by-laws are enforced, have placed their business under the control of the majority vote of the association, a power the exercise of which was not given by the fundamental law of the order, and doubtless not contemplated when the association was formed. The purpose, we think, from the character of this corporate legislation, was to discriminate in favor of certain insurance companies against the appellees; but as these by-laws were adopted by nearly all the members, it may be assumed that no such motive influenced the action of the association in passing them.

The common law rule, recognized and adopted when business relations were not so multiplied and extensive as now, and when less necessity existed for enforcing it, condemned all such restrictions upon trade and business intercourse with men as is found to exist in this case. The right of one to control his own property as he pleases, and to employ those necessary to aid him in his business upon such terms as may be agreed on, when not in violation of the law of the land, is the rule of the common law, and the right of the laborer to dispose of his skill and industry to whom he pleases, and for the price agreed on, is embraced within the same rule. In all classes of business the employer and the employe should be allowed to contract with each other, unrestrained by others who may demand that the one shall give more or the other receive less, and, as a general rule, when restrictions are placed upon these rights by combinations or associations of men they will be regarded as in violation of law, and void.

An association organized for the purpose of advancing the private interests of members, by which one or all are prevented from employing only a certain number of laborers or agents in the conduct of the business of each, and then only at a fixed rate, is an incentive for those seeking employment as agents in the same line of business to organize counter associations, that are always attempted to be justified under the plea of self-protection, when both are in direct violation of law.

Cooley on Torts, page 280, says: "Any one has an undoubted right to refuse to be employed by another, but he has no right whatever to resort to compulsion of any sort to keep others from employment." "It is also indictable to combine to engross under one control any particular business staple so as to force from the communtity its purchase at exorbitant prices." (Wharton's Criminal Law, section 2324, 7th edition.) In the case of Hilton v. Eckersley, 6 El. & Bl., 76, eighteen owners of cotton mills in Lancaster, England, formed a combination by which they agreed that for twelve months they would each carry on their mills with respect to whom they should employ, the wages they should pay, the times they should keep open, &c., according to the direction of the majority of the others. The agreement was held to be illegal, because they had surrendered their discretion as to who they should employ, and were prevented from paying any sum for wages except such as were fixed by the majority, and could only employ such persons as the majority would authorize.

That case is very much like the case being consid-

ered, and the English court reached the conclusion, based on the rule of the common law, that these were regulations restraining each man's power of carrying on his trade according to his discretion, denying him the right to employ others, and, therefore, such restraints on trade as could not be enforced. (Stanton v. Allen, 5 Denio, 434; People v. Fisher, 14 Wendell, 9; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. St., 173; People v. Medical Society, 24 Barb., 572.)

This court, in every instance where the questions involved here, or those similar in their character, have been presented, has followed the common law doctrine, and what the common law condemns as injurious to the public in interest of trade, and leading to disastrous results, is now being insisted by the appellants as being a restraint upon the exercise of individual rights. We think the experience of business life exemplifies the wisdom of the principle recognized, and, if required to depart from it, we would feel inclined to make it more rigid in its application than is now sanctioned by law. In the case of Sayre v. Louisville Union Benevolent Association, reported in 1 Duvall, 146, organized for the purpose of affording relief to sick and disabled members, with the power to adopt such rules for their mutual interests, and as common carriers, as shall seem proper, the society passed a by-law declaring that no member shall go into any river or trade, and work for less than a fixed sum, or carry any freight for less than the established rate in the trade, and prohibiting members from advertising or working for any boat not represented in the association, or acting in con-

cert with it, and annexing a penalty for the violation
of these by-laws. Sayre was a member of the asso-
ciation, *and subscribed* his name to the by-laws.
He was sued to recover a fine of two hundred and
fifty dollars for carrying freight for less than the es-
tablished rate, and it was held that the by-law under
which the fine was imposed was illegal and void.
The court in discussing the question laid some stress
upon the fact that the parties to the association were
common carriers, and, therefore, compelled by law to
carry freight for a reasonable price; but an examina-
tion of the authorities, as well as the doctrine an-
nounced in that case, will show that any agreement
or combination for the purpose of depressing the
price of wages, or elevating them, to the injury of
the public, is a conspiracy at the common law, and
subject to indictment  The laborer has the right to
fix his own price for his labor, and the employer the
sum he is willing to pay, and combinations entered
into for the purpose of preventing the exercise of those
rights are unlawful.   In the case of Nash v. Page,
80 Ky., 539, where ten warehousemen of the city of
Louisville undertook to exclude the plaintiff from
their warehouse as a buyer, it was held that the
result of such conduct was to deprive the producers
and sellers of free and full competition, and their
action was therefore condemned.

In the case of Anderson v. Jett, reported in 89 Ky.,
375, where the owners of two steamboats, rivals in
business, in order to prevent competition, agreed to
pool their profits, it was held that, as the object of the
contract was to prevent competition in the trade, the

contract was void, and no recovery could be had for its breach.

We do not mean to adjudge that every agreement or combination detrimental to trade and injurious to the public is an indictable offense; that question is not before us; but we do adjudge that the restraint placed upon these appellees by the by-laws of the association, as to the number of solicitors they may employ, and the time of employment, and the compensation to be paid them, and forbidding them to contract with a solicitor so as to make his pay depend on the number of risks he procures, and forbidding an employment of a solicitor who has severed his connection with another member, are each and all in violation of law, and the judgment of the chancellor, giving the appellees all the rights pertaining to other members of the association, must be affirmed.