## COMBINATIONS OF EMPLOYERS.

[Superior Court of Cincinnati—Special Term.]

PETER GRAF AND ALBERT W. GRAF, PARTNERS AS P. GRAF & SON, v. THE MASTER HORSE-SHOERS' PROTECTIVE ASSOCIATION OF CINCINNATI.

Decided, January 12, 1904.

*Agreements Between Employers Tending to Enhance Prices—Contrary to Public Policy—Rights of a Member as Against the Organization— Injunction—The Ohio Anti-Trust Statute.*

1. It is very doubtful whether a combination of proprietors or employers, having as its purpose the maintaining of prices in their line of work, comes within the inhibition of the Ohio anti-trust statute; but no opinion is expressed upon the question.

2. But the well settled principle that contracts, agreements, combinations, and arrangements between persons in the same business, the tendency of which is to impair competition and enhance prices to the injury of the public, are against public policy and therefore illegal and void, applies to such a combination of employers.

3. And such a combination is not saved from the effect of this prin-
ciple by the fact that these employers may themselves do the same
work as their employes.

4. The principle that a contract which is not *malum in se* but *malum
prohibitum*, and has not been fully executed, may be rescinded by
either party and relief therefrom granted in law and equity, applies
in such a case; and a member of the combination is not estopped
from enjoining the organization from suspending him from mem-
bership for failing to maintain the prices agreed upon.

SMITH, J.

Plaintiffs are partners under the firm name of P. Graf & Son
and are engaged in carrying on the business of horse-shoers in
the city of Cincinnati; and the defendant, The Master Horse-
Shoers' Protective Association, is a corporation not for profit.

The association is regularly incorporated under the laws of
Ohio; is composed of about seventy-five members consisting of
individuals, partnerships and corporations doing business in the
city of Cincinnati and its declared object is "the promotion of
the interests of the master horse-shoers of the association; to pre-
serve and disseminate valuable business information; and to ad-
just as far as practicable all controversies and misunderstndings."

The plaintiffs paid an initiation fee of $50 to become a member
of the defendant association.

The association from time to time fixes a price list for work
done in the horseshoeing business; and in July, 1902, a resolution
was adopted "That any member suspected of shoeing horses below
the regular price list be notified to make an affidavit to same;
if he refuses he be fined the sum of $25, to be enforced by the
chairman."

In June, 1903, the following price list was adopted:
    4 New shoes, each 50 cents.  Per set.............$2.00
       Driving or pleasure horses  extra.
    4 Shoes reset, each 35 cents.  Per set.............. 1.25
       Shoes toed, each 40 cents.  Per set............. 1.50
       Shoes sharpened, each 40 cents.  Per set........ 1.50
       Bar shoes, each $1.00.
       Bar shoes toed or heeled, each 50 cents.
       Bar shoes sharpened, each 50 cents.
       Drop shoes, each 25 cents.
       Whitman & Barnes shoes.  Per set........ .... 5.00

All other pads, etc.  Per set..................... 5.50
Sending man to stable, per hour................... 1.00
All city work, 4 new shoes........................ 2.50
All city work, 4 shoes reset or sharpened........ 2.00
Old shoes for city, each.......................... 50

On or about October 1, 1903, the president of the association called upon Peter Graf, one of the members of plaintiff firm, and requested him to make affidavit that he had not done work for the National Ice Company and other persons for a less price than that fixed by the association's scale of prices.  He refused to make such affidavit and thereupon the plaintiff firm was fined $25; and by the rules of the association unless the fine is paid within thirty days the firm will be suspended from membership in the same.

A few days after the imposition of the fine the plaintiff firm brought this action to enjoin the defendant from suspending him or in any way depriving him of his rights in said association by reason of his failure to make the affidavit referred to.

It is contended by the plaintiff that the combination of the members of the defendant association is forbidden by the anti-trust statute of this state, Section 4427-1 to Section 4427-12 Revised Statutes, and that as this statute authorizes courts of equity by injunction to prevent a threatened violation of the terms of the statute the plaintiff is entitled under this statute to the relief prayed for.

It is very doubtful, to say the least, whether this statute applies to a combination such as is presented by this case; and by the construction given to this statute by Dempsey, J., in a very carefully considered opinion (*Runck* v. *Cloud,* 8 N. P., 437), the statute would not be applicable.  As I do not find it necessary to decide this question I pass it by without any expression of opinion upon it.

It is contended by the defendant that the combination is a lawful one for the reason that combinations of workmen known as trades unions for the purpose of raising their wages are now upheld by the courts, and that this combination falls under that class.

I shall not undertake to define here the rights of workingmen to combine nor the limitations upon such right.

Because the argument of counsel for the defendent based upon the legality of trade unions or workingmen is not applicable to the present case, for the reason that the members of the defendant association are not employes but employers of labor, and each the proprietor of the business in which he works—the fact that such employers may themselves do the same work as the employes does not change the character of the combination. It is a combination of proprietors and employers, not employes.

The principle is well settled that contracts, agreements, combinations or arrangements between persons in the same business, the tendency of which is to impair competition and to enhance prices, to the injury of the public, are against public policy and therefore illegal and void; and as the combined action of the members of this association is to prevent competition among such members and to increase the price of horse-shoeing to the public any resolution or by-law whose object is to effect such combined action is illegal and void. *Emery et al* v. *The Ohio Candle Co.,* 47 O. S., 320; *Salt Co.* v. *Guthrie,* 35 O. S., 666; *State, ex rel,* v. *Standard Oil Co.,* 49 O. S., 84.

A case directly in point is that of *Bailey* v. *Association of Master Plumbers of City of Memphis,* decided by the Supreme Court of Tennessee, August, 1899, 52 S. W., 853.

In that case a by-law of an association of master plumbers of the city of Memphis provided that each member of the association was required to report each week what work he had done, and if such work was done in competition with any other member, the member doing the work was to pay into the treasury of the association a fixed sum, according to a schedule agreed on and made a part of the by-law.

The by-law was held to be in restraint of trade and void. It was also held that in that case that "it is not the number of persons participating in such by-law or the extent of the territory included, but the injury to the public in the territory which characterizes the interruption of trade as illegal."

As the resolution adopted by the defendant fixing a schedule of prices and inflicting a money penalty and suspension for a

violation of the schedule has a tendency to prevent competition and enhance prices, it is against public policy and void; and an additional reason for the application of this rule of law is found in this case in the fact that the defendant association is acting under a charter from the state of Ohio and is limited therefore to acts which do not violate either the statute or the common law of the state. *Sayre* v. *Louisville Union Benevolent Association,* 1 Duvall, 143 (85 Am. Dec., 613); 1 Thompson on Corporations, Section 23.

It is urged for the defendant, however, that conceding the illegality of the resolutions of the defendant the plaintiff can not complain of them for the reason that he assisted in the passage of the same and in inflicting the penalties thereby provided upon other members; that he is *in pari delicto* with the defendant; and he does not therefore come into a court of equity with clean hands, and therefore can have no relief.

The principle is often broadly stated that when parties enter into an illegal agreement the courts regard them as *in pari delicto* and consequently will leave them where they find them, affording no relief to either of them either in law or equity. But this statement is too broad as it is subject to a number of exceptions, one of which is that where a contract prohibited by law is not *malum in se* but *malum prohibitum,* and has not been fully executed, either party may rescind the contract and have relief against it both in law and equity. The principle upon which the exception is made is that public policy is best subserved by granting a *locus penitentiae* to a party, and by permitting him to disaffirm the contract prevent the execution of it.

One of the leading cases on this subject is *Spring Company* v. *Knowlton,* 103 U. S., 49, in which the principle is declared and applied in an action at law.

The same principle was applied by this court in general term in equity in *Hafer* v. *The N. Y., L. E. & W. R. R. Co. et al,* 14 W. L. B., 68, the court relying upon *Spring Co.* v. *Knowlton,* 103 U. S.

One of the latest cases on this subject is *McCutcheon et al* v. *Merz Capsule Co.,* 71 Fed. Rep., 787, decided by the United States Circuit Court of Appeals. In that case certain corporations en-

tered into and partially executed a contract which was illegal on the ground that it was in restraint of trade and tended to create a monopoly. One of the parties sought to disaffirm the contract and to have relief in equity.

In deciding that he was entitled to such relief the court said:

"Under all the circumstances to hold that the complainant is estopped to rely upon the illegality of the agreement and conveyance to which it_was a party would be to effectuate an unexecuted, unlawful object and aid in the defeat of a legal prohibition. The door of this court should not be closed against one seeking to extricate himself from an unlawful connection, provided relief is sought without delay, and before the contract is executed, or other persons have irrevocably acted in reliance upon its supposed legality."

In Cooke's Trade and Labor Combinations, Section 30, it is said:

"In accordance with the doctrine applicable generally to agreements illegal as against public policy, no proceeding, whether legal or equitable can be maintained, as between such parties, to enforce any provision of the agreement, *though it may be otherwise as to a proceeding in disaffirmance of the agreement.*"

In *Huston* v. *Reutlinger,* 91 Ky., 333, it was held that where by-laws in restraint of trade were passed by an association of underwriters and the association was undertaking to suspend or expel a member from the association for a violation of the same, the chancellor would interfere by injunction to prevent the enforcement of such by-laws against an offending member.

To refuse relief to the plaintiffs in this case would have the effect of enforcing an illegal arrangement that had not as yet been carried into execution; whereas to grant them relief would be to permit them to refuse to abide by the arrangement and thus to contribute materially towards its dissolution.

I am of the opinion that the plaintiffs are entitled to a decree in their favor.

*John C. Healy* and *A. L. Herrlinger,* for plaintiffs.

*H. D. Peck,* for defendant.